UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ALEX MERCADO, by and through Silvia Mercado, successor-in-interest to decedent Alex Mercado; and SILVIA MERCADO, as an individual, | Case No.: 3:26-cv-00059-H-LR |
| Plaintiffs, | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | [Doc. No. 10] |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, a California agency; ROBERTO A. ARIAS, Warden of Calipatria State Prison; and DOES 1 to 20, individually, jointly and severally, | |
| Defendants. | |

On January 5, 2026, Plaintiffs Estate of Alex Mercado and Silvia Mercado filed a complaint against Defendants California Department of Corrections and Rehabilitation ("CDCR") and Roberto A. Arias ("Arias"), Warden of Calipatria State Prison ("CSP"). (Doc. No. 1, Compl.)  On March 2, 2026, Plaintiffs filed a first amended complaint ("FAC").  (Doc. No. 9, FAC.)  On March 16, 2026, Defendants filed a motion to dismiss the FAC.  (Doc. No. 10.)  On June 8, 2026, Plaintiffs filed their opposition.  (Doc. No. 12.) Defendants CDCR and Arias did not file a reply.  On June 18, 2026, the Court took Defendants' motion to dismiss under submission.  (Doc. No. 13.)  For the reasons below, the Court **GRANTS IN PART** Defendants' motion to dismiss.

1

**Background**

The Court takes the following background from the allegations in Plaintiffs' FAC. (Doc. No. 9, FAC.)  Alex Mercado was a 31-year-old man incarcerated at CSP, a maximum-security prison operating under the supervision of CDCR.  (Doc. No. 9, FAC, ¶¶ 13; 15.)  Prison staff regularly placed Mr. Mercado in close proximity to two other prisoners, Eric Gonzalez and Javier A. Torres, including in the same dayroom, common areas, and exercise yard.  (Doc. No. 9, FAC, ¶ 18.)  Mr. Gonzalez was serving a life sentence with the possibility of parole for first-degree murder.  (Doc. No. 9, FAC, ¶ 19.)  Mr. Torres was serving a six-year sentence for parole violation and carjacking.  (Doc. No. 9, FAC, ¶ 20.)  CDCR staff documented both Mr. Gonzalez and Mr. Torres as violent, high-risk inmates, but housed them alongside Mr. Mercado in CSP's general population. (Doc. No. 9, FAC, ¶¶ 19–20; 40.)

In October 2025, approximately one month before the fatal attack, CSP inmates attacked Mr. Mercado and broke one of his ribs.  (Doc. No. 9, FAC, ¶ 21.)  Mr. Mercado reported this assault to CDCR staff.  (Doc. No. 9, FAC, ¶ 21.)  Despite Mr. Mercado's resulting vulnerability, CDCR staff did not reclassify him, place him in protective custody, or separate him from other inmates.  (Doc. No. 9, FAC, ¶¶ 21; 37–40.)  Plaintiffs allege that CDCR staff knew, or reasonably should have known, that Mr. Mercado was at heightened risk and may be further targeted due to his recent attack.  (Doc. No. 9, FAC, ¶¶ 22; 38.)

On November 10, 2025, at approximately 10:20 a.m., Mr. Gonzalez and Mr. Torres attacked Mr. Mercado in the exercise yard using an inmate-manufactured weapon, stabbing Mr. Mercado multiple times in the chest and inflicting blunt-force trauma.  (Doc. No. 9, FAC, ¶ 23.)  Plaintiffs allege that the attack was sufficiently violent and prolonged to attract the attention of correctional officers.  (Doc. No. 9, FAC, ¶ 23.)  Plaintiffs further allege that correctional officers willfully and deliberately failed to intervene or take reasonable measures to protect Mr. Mercado during the attack.  (Doc. No. 9, FAC, ¶ 24.)  Plaintiffs allege that this deliberate inaction included, but was not limited to, permitting violent

2

inmates to congregate with vulnerable inmates despite CDCR policies, disregarding prior warnings about credible threats, failing to supervise the exercise yard or observe the attack through CCTV, and failing to immediately stop the attack or verbally direct the attackers to cease the assault.  (Doc. No. 9, FAC, ¶ 24.)

Following the incident, CSP staff restrained Mr. Gonzalez and Mr. Torres and initiated life-saving measures on Mr. Mercado.  (Doc. No. 9, FAC, ¶ 25.)  CSP staff transported Mr. Mercado to an outside medical facility for emergency care.  (Doc. No. 9, FAC, ¶ 25.)  Mr. Mercado was pronounced dead at approximately 11:46 a.m.  (Doc. No. 9, FAC, ¶ 25.)  Plaintiffs allege that Defendants failed to provide emergency medical care within the time frames required by CSP Local Operating Procedure 3.7.1-1, failed to comply with mandatory classification and supervision requirements under CDCR Department Operations Manual Section 62010 and California Code of Regulations Section 3377.2, and failed to intervene during the attack under California Code of Regulations Section 3268(a)–(b).  (Doc. No. 9, FAC, ¶¶ 26–28.)

Plaintiffs further allege that the murder of Mr. Mercado was part of a documented pattern of lethal inmate-on-inmate violence at CSP that Defendants knew or should have known posed a substantial risk of harm.  (Doc. No. 9, FAC, ¶ 29.)  Plaintiffs state that in the nine years preceding Mr. Mercado's murder, at least four other incarcerated persons were killed by fellow inmates at CSP in similar circumstances.  (Doc. No. 9, FAC, ¶ 29.)  Plaintiffs allege that Defendants were on notice of these risks because of a recent surge in prison violence.  (Doc. No. 9, FAC, ¶ 30.)  Plaintiffs also allege that CDCR acknowledged this risk by implementing modified programming at eleven high-security facilities, including emergency security measures at CSP.  (Doc. No. 9, FAC, ¶ 30.)  One such intervention was system-wide emergency safety sweeps that recovered 53 improvised weapons from Level III and Level IV housing areas.  (Doc. No. 9, FAC, ¶ 30.)

On January 5, 2026, Plaintiffs filed their complaint in United States District Court, Southern District of California.  (Doc. No. 1, Compl.)  On March 2, 2026, Plaintiffs filed their FAC.  (Doc. No. 9, FAC.)  Plaintiffs bring ten causes of action against Defendants,

including violations of 42 U.S.C. § 1983, the Eighth Amendment for failure to provide medical care post-attack, Cal. Gov. Code §§ 845.6 and 815.6, Cal. Civ. Code § 52.1 ("Bane Act"), and claims for intentional infliction of emotional distress, negligence, and wrongful death.  (Doc. No. 9, FAC, ¶¶ 65–150.)

**Discussion**

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and authorizes dismissal of a complaint if it lacks "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff."  Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017) (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  A court need not accept legal conclusions as true.  Id. at 678.

If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).  Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, the Court may deny leave to amend where any amendment would be futile.  See De Soto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

4

## II.    Analysis

### A. Defendant CDCR's Sovereign Immunity

Defendants argue that Defendant CDCR should be dismissed from this action because Defendant CDCR has sovereign immunity under the Eleventh Amendment. (Doc. No. 10.)  Plaintiffs concede that all claims against Defendant CDCR may be dismissed; however, Plaintiffs argue that any dismissal must be without prejudice.  (Doc. No. 12.)  Plaintiffs contend that dismissal must be entered without prejudice because barring claims under the Eleventh Amendment is a jurisdictional issue, not an adjudication on the merits. (Doc. No. 12.)   The Eleventh Amendment bars Plaintiffs' state law claims against Defendant CDCR.  Brown v. California Dept. of Corrections, 554 F.3d 747, 752 (9th Cir. 2009).  Therefore, the Court dismisses all state law claims against Defendant CDCR. Because any amendment by Plaintiff would be futile, the Court declines to grant leave to amend for the state law claims.

### B. Tenth Cause of Action for Prospective Injunctive and Declaratory Relief

Defendants next argue that Plaintiffs' tenth claim for injunctive and declaratory relief should be dismissed with prejudice because Plaintiffs lack standing and the claim is moot. (Doc. No. 10.)  Plaintiffs do not oppose dismissal of their tenth cause of action but respectfully request that the dismissal be entered without prejudice.  (Doc. No. 12.)

Leave to amend a complaint should be freely given after an order of dismissal unless the deficiencies in the complaint cannot be cured by amendment.  Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc., 268 F.3d 1133, 1137 (9th Cir. 2001); DeSoto, 957 F.2d at 658 ("A district court does not err in denying leave to amend where the amendment would be futile).  Considering the facts as alleged by Plaintiffs, the Court concludes that Plaintiffs cannot cure the defects in their tenth claim for injunctive and declaratory relief. To sustain their claim for injunctive relief, Plaintiffs must demonstrate a "real or immediate threat" that they could be wronged again. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).  However, Mr. Mercado's death moots Plaintiffs' interest in injunctive relief.  And to the extent such injunctive and declaratory relief is sought "to protect the rights of inmates

currently housed at CSP," Plaintiffs lack the standing to assert claims on behalf of third parties.  (Doc. No. 9, FAC, ¶ 149); Gonzales v. California Dept. of Corrections, 739 F.3d 1226, 1234 (9th Cir. 2014) (citing Powers v. Ohio, 499 U.S. 400, 410 (1991)).  Plaintiffs' allegations demonstrate that any further amendment would be futile to curing the mootness and standing defects in their claim for injunctive and declaratory relief.  See Orion Tire, 268 F.3d at 1137; see DeSoto, 957 F.2d at 658.  The Court thus dismisses with prejudice Plaintiffs' tenth claim for injunctive and declaratory relief.

### C. Survival Damages Based on Pain, Suffering, or Disfigurement

Defendants move to dismiss Plaintiffs' request for survival damages to the extent they include non-economic losses, such as pain, suffering, or disfigurement.  (Doc. No. 10.)  Defendants argue that California Code of Civil Procedure Section 377.34(a) bars recovery for non-economic pre-death damages, and that the temporary non-economic losses carveout in Section 377.34(b) lapsed on January 1, 2026.  (Doc. No. 10.)  Plaintiffs respond that Defendants misconstrue Section 377.34's restriction.[1]  (Doc. No. 12.)

### i.   Survival damages for federal claims

Plaintiffs' first claim for failure to protect Mr. Mercado pre-attack and eighth claim for failure to provide medical care post-attack are both federal causes of action under 42 U.S.C. § 1983.  (Doc. No. 9, FAC, ¶¶ 65–71; 127–134.)  Survival damages recoverable on Section 1983 claims are governed by federal law, not Section 377.34 of the California Code of Civil Procedure, and are thus not limited to solely economic loss.  (Doc. No. 12.)  In Chaudhry v. City of Los Angeles, the Ninth Circuit concluded that "California's prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with § 1983's deterrence policy" and that "Section 377.34 therefore does not apply to § 1983 claims where the decedent's death was caused by the violation of federal

---

[1] Plaintiffs also argue that their request for punitive damages against Defendant Arias and request for wrongful death damages on behalf of Silvia Mercado should survive the motion to dismiss.  (Doc. No. 12.)  Defendants do not move to strike Plaintiffs' requests for punitive damages and wrongful death damages.  (Doc. No. 10.)  Plaintiffs' arguments for punitive and wrongful death damages are better suited for summary judgment when the issues are more fully developed.

3:26-cv-00059-H-LR

law." 751 F.3d 1096, 1105 (9th Cir. 2014). The Court thus denies Defendants' motion to dismiss Plaintiffs' requests for non-economic damages on their Section 1983 claims. See id.

### ii. Survival damages for state law claims

Plaintiffs' third claim for failure to summon medical care under Cal. Gov. Code § 845.6, fifth claim for intentional infliction of emotional distress, sixth claim for negligence, and ninth claim for violation of mandatory duty under Cal. Gov. Code § 815.6 are all state law claims and therefore limited to economic survival damages by Section 377.34. Cal. Code Civ. Proc. § 377.34(a) (". . . the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death . . . and do not include damages for pain, suffering, or disfigurement."). Plaintiffs agree with Defendants that Section 377.34 limits their survival damages on state law claims to solely economic loss. (Doc. No. 12.) The Court thus grants Defendants' motion to dismiss Plaintiffs' requests for non-economic damages on their state law causes of action.

### Conclusion

For the reasons above, the Court grants in part Defendants' motion to dismiss. Plaintiffs must file a second amended complaint ("SAC") adherent to this order within **thirty (30) days** from the date this order is filed. Defendants must answer or otherwise respond to Plaintiffs' SAC within **twenty-one (21) days** from the date the SAC is filed.

**IT IS SO ORDERED.**

DATED: June 22, 2026

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT